IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WILLIAM RICHARD FRAZIER andPLAINTIFFS
FRAZIER INSURANCE AGENCY INC.

v.No. 4:10CV00168 JLH

NATIONWIDE MUTUAL INSURANCE COMPANY;
NATIONWIDE MUTUAL FIRE INSURANCE
COMPANY; NATIONWIDE LIFE INSURANCE
COMPANY; NATIONWIDE GENERAL INSURANCE
COMPANY; NATIONWIDE PROPERTY AND
CASUALTY INSURANCE COMPANY;
NATIONWIDE VARIABLE LIFE INSURANCE
COMPANY; and COLONIAL INSURANCE
COMPANY OF CALIFORNIADEFENDANTS

**OPINION AND ORDER**

William Richard Frazier and Frazier Insurance Agency, Inc. (collectively "Frazier") entered into an individual agency agreement and a corporate agency agreement with the defendants (collectively "Nationwide"). Nationwide cancelled the agency agreements on June 8, 2009. Frazier alleges that Nationwide breached the agreements and is liable on a theory of promissory estoppel. Nationwide has counterclaimed for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, default on a loan, and unjust enrichment. Nationwide has moved for judgment on the pleadings on all claims.

On a motion for judgment on the pleadings, a court applies the same standard as in a 12(b)(6) motion for failure to state a claim. *St. Paul Ramsey Cty. Med. Ctr. v. Pennington Cty., S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988). A court should grant the motion when no material issues of fact remain and the moving party is entitled to judgment as a matter of law. *Poehl v. Countrywide Home Loans, Inc.*, 528 F.3d 1093, 1096 (8th Cir. 2008). The court must view all facts pled by the nonmoving party as true and grant all reasonable inferences in that party's favor. *Syverson v.*

*FirePond, Inc.*, 383 F.3d 745, 749 (8th Cir. 2004). In addition to the allegations contained in the complaint, the court may also consider exhibits attached to the complaint as well as public records to make its determination. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("The district court may take judicial notice of public records . . . ."); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 n.4 (8th Cir. 2003) (considering exhibits attached to the complaint on a motion to dismiss).[1]

As mentioned, Richard Frazier entered into an individual agency agreement with Nationwide, while Frazier Insurance Agency, Inc., entered into a corporate agency agreement with Nationwide. For present purposes, the terms of the two agreements are substantially the same. Pursuant to the terms of the agreements, Frazier promised to sell Nationwide products exclusively. The agreements could be cancelled at any time, with or without cause. Upon cancellation of the agreements, Frazier would be entitled to receive deferred compensation benefits unless and until he engaged in or became licensed as an agent, solicitor, representative, or broker, or in any way was connected with the fire, casualty, health, or life insurance business within one year following cancellation within a 25-mile radius of the Agency's business location at the time of cancellation. Any amendments or modifications to the agreement had to be made in writing signed by Frazier and an officer of Nationwide.

Frazier sold Nationwide products exclusively until 2007. In 2007, he purchased two independent insurance agencies: one in Little Rock, Arkansas, and one in Stuttgart, Arkansas. Although Frazier contends that Nationwide encouraged him to purchase independent agencies,

---

[1] Corporate filings with the Arkansas Secretary of State are public records. *See Turner v. Altivity Packaging, L.L.C.*, No. 4:07-CV-1642 (CEJ), 2008 WL 80648, at *1 (E.D. Mo. Jan. 7, 2008); *Yellen v. Hake*, 437 F. Supp. 2d 941, 964 n.3 (S.D. Iowa 2006).

Nationwide terminated its agreement with Frazier on June 8, 2009,[2] purportedly for violating the exclusivity agreement. Frazier argues that the real reason Nationwide cancelled the agreement was so that it could give his book of business to someone else who wanted to open a Nationwide office in Little Rock. After cancelling the agreement, Nationwide made monthly compensation payments to Frazier in May, June, July, August, and September of 2009 pursuant to provisions in the agreements that provided for payment of deferred compensation upon cancellation of the agreements, unless the agent induced or attempted to induce Nationwide policyholders to lapse, cancel, or replace the Nationwide insurance. Subsequently, Nationwide stopped making payments and has refused to make payments since that time. Nationwide alleges that Frazier, within one year of cancellation, was involved with another insurance business within 25 miles of Frazier Insurance. If those allegations are true, Nationwide would have the right, pursuant to the terms of the agreements, to terminate the deferred compensation payments and perhaps to recover payments already made. Frazier denies those allegations. Nationwide has attached to its motion records from the Arkansas Secretary of State and the Arkansas Insurance Department that it contends prove its allegations and entitle it to judgment on the pleadings despite Frazier's denial of the material facts. In response, Frazier has submitted an affidavit stating facts to show that the inferences Nationwide would have the Court decree from the records of the Secretary of State and the Arkansas Insurance Department are incorrect.[3]

Based on the pleadings and exhibits attached to the pleadings, cancelling the agency agreement with Frazier Insurance was not a breach of contract. When a contract is terminable at will

---

[2] June 8, 2009, is the date alleged in Frazier's complaint. Nationwide contends that it terminated the agreement on May 8, 2009.

[3] The affidavit is outside the pleadings and will not be considered.

by either party, termination of that contract by one of the parties cannot constitute a breach of contract. *See McNeill v. Sec. Benefit Life Ins. Co.*, 864 F. Supp. 93, 95 (E.D. Ark. 1993) (granting defendants' motion for summary judgment on wrongful termination claim when contract provided for at-will termination by either party); *Lynn v. Wal-Mart Stores, Inc.*, 102 Ark. App. 65, 71, 280 S.W.3d 574, 579 (2008) ("In Arkansas, an employer may fire an employee for good cause, bad case, or no reason at all under the employment-at-will doctrine."). The agency agreement at issue in this case states, "[T]he Agency or Nationwide have the right to cancel this Agreement at any time with or without cause." Even if Nationwide terminated the contract for the reason Frazier alleges, that termination would not give rise to a cause of action for breach of contract. Terminating a contract that is terminable at any time without cause is not a breach of the agreement.

Nor do Frazier and Frazier Insurance have a valid promissory estoppel claim against Nationwide. *See Mickens v. Corr. Med. Servs., Inc.*, 395 F. Supp. 2d 748, 753 (E.D. Ark. 2005) ("Because Plaintiff and [Defendant] entered into a contract for employment, promissory estoppel is unavailable to vary the agreed upon terms of employment."). Although Frazier concedes that he had a written contract with Nationwide, he alleges that Nationwide, through its words and actions, led him to believe that the agreement would not be cancelled if he purchased independent insurance businesses, but that cannot give rise to a claim for promissory estoppel. The agreements stated that they could be cancelled at any time, and any amendments to the agreements were to be made in writing signed by Frazier and Nationwide. No such amendments were made. "Promissory estoppel is not to be used as a vehicle to engraft a promise on a contract that differs from the written terms of the contract." *Moore v. Keith Smith Co.*, No. CA 08-884, 2009 WL 1232094, at *5 (Ark. Ct. App. May 6, 2009) (citing *Halls Ferry Invs., Inc. v. Smith*, 985 S.W.2d 848 (Mo. Ct. App. 1998)). While

promissory estoppel is a basis for recovery when formal contractual elements do not exist, it is not available when, as in this case, the parties entered into a formal contract. *Id.* (citing *Cmty. Bank of N. Ark. v. Tri-State Propane*, 89 Ark. App. 272, 203 S.W.3d 124 (2005)).

Furthermore, since Frazier has admitted that he purchased two independent insurance agencies without written consent and while under an exclusive agency agreement with Nationwide, he effectively concedes that he breached the terms of the agreement with Nationwide.[4]  Therefore, Nationwide is entitled to judgment on the pleadings with respect to Count I of its counterclaim.

Nationwide is not, however, entitled to judgment on the remaining claims.  As explained above, upon cancelling the agreements, Nationwide was obligated to pay Frazier deferred compensation benefits in monthly installments.  Nationwide made payments in May, June, July, August, and September 2009, but it has refused to make payments since that time.  Nationwide argues that it does not have to compensate Frazier and is entitled to reimbursement for the compensation payments that were made because Frazier was engaged in the insurance business in Little Rock within one year after cancellation of the agency agreement.

Nationwide asks the Court to rely on electronic copies of filings with the Secretary of State and records from the Arkansas Insurance Department to find that Frazier was engaged in the insurance business in Little Rock after cancellation of the operating agreements, even though he has denied those allegations in his answer to the counterclaim.  At least two of the documents indicate

---

[4] The exclusivity clause is separate and distinct from the covenant not to compete. *See Guardian Fiberglass, Inc. v. Whit Davis Lumber Co.*, No. 4:05-CV-00463 GTE, 2006 WL 796946, at *14 (E.D. Ark. Mar. 27, 2006) (considering separately a covenant not to compete and an exclusive supplier provision, finding no issue of material fact on the issue of whether the defendant breached the exclusive supplier provision, and granting summary judgment for the plaintiff); *see also* Black's Law Dictionary 392 (8th ed. 2004) (defining a noncompetition covenant as a promise "not to engage in the same type of business for a stated time in the same market as the buyer, partner, or employer").

that, at the time they were filed, Frazier was an officer or agent of an insurance corporation, and the agent's listed address was in Little Rock, Arkansas. The documents were filed well before June 2009. Although the documents state that the corporations are still in good standing, they do not conclusively prove that, after cancellation of the agency agreements Frazier was engaged in the insurance business in Little Rock, Arkansas. Nationwide also asks the Court to rely on Frazier's own admission that he sold his shares of one of the independent agencies (Cantrell Hill Insurance, Inc.) on June 19, 2009—after his agency agreement with Nationwide was cancelled. Assuming that Nationwide cancelled the agency agreements on June 8, 2009, and Frazier sold his shares in an independent agency in Little Rock eleven days later, the issue is whether the fact that it took Frazier eleven days to sell those shares constitutes a material breach of the non-compete agreement. "Whether a covenant not to compete has been materially breached is a factual, not a legal issue." *Cont'l Carbonic Prods., Inc. v. Cohen*, 96 Ark. App. 305, 310-11, 241 S.W.3d 296, 301 (2006). No facts have been present to show whether the breach, if one occurred, was material. Assuming, without deciding, that in ruling on a 12(b)(6) motion it would be appropriate to consider public records that contradict rather than supplement allegations in pleadings, the public records still do not establish that Nationwide is entitled to judgment.

Nor do the pleadings establish that Frazier violated his fiduciary obligations to Nationwide by purchasing independent insurance companies while selling Nationwide policies. "Before there can be a breach of a fiduciary duty, a fiduciary relationship . . . must exist." *W. Memphis Adolescent Residential, LLC v. Compton*, Case No. CA 09-167, 2010 WL 2132003 (Ark. Ct. App. May 26, 2010). "The party claiming the existence of a fiduciary or confidential relationship has the burden of establishing the facts supporting such a relationship." Howard W. Brill, 1 Arkansas Law of

Damages § 15:2 (5th ed. 2009).  Here, Nationwide alleges that an agency relationship existed between Frazier, Frazier Insurance, and Nationwide.  It is true that the agreements designated Frazier as an agent authorized to represent Nationwide, but that fact is not conclusive.  Under Arkansas law, the two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal and (2) that the agent act on the principal's behalf and be subject to the principal's control.  *Taylor v. Gill*, 326 Ark. 1040, 1043, 934 S.W.2d 919, 921 (1996).  The agency agreements expressly provided that Frazier would be an independent contractor for Nationwide—not an agent.  The Court cannot conclude based solely on the pleadings that Frazier owed a fiduciary duty to Nationwide.  *See Wortham v. Am. Family Ins. Grp.*, 385 F.3d 1139, 1140-41 (8th Cir. 2004) (concluding, under the Eighth Circuit's multi-factor test, that an insurance agent was an independent contractor, in part because the agent agreement expressly identified her as such); *see also Birchem v. Knights of Columbus*, 116 F.3d 310, 313 (8th Cir. 1997) ("[F]ederal courts have consistently held that insurance agents are . . . independent contractors . . . .").

     Nor do the pleadings conclusively establish that, by purchasing independent insurance companies, Frazier misappropriated Nationwide's proprietary trade secret information.  Arkansas has adopted the inevitable-disclosure rule for misappropriation: "a plaintiff may prove a claim of trade-secrets misappropriation by demonstrating that a defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets."  *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 421, 994 S.W.2d 468, 474 (1999).  The Court must look at the facts of the case to determine whether, by virtue of purchasing independent companies, Frazier necessarily relied on Nationwide's trade secrets.  *See id.* (weighing the evidence to determine that a violation of a non-compete

agreement did not necessarily result in misappropriation of trade secret information). Based on the pleadings alone, the Court cannot make that determination.

Finally, Nationwide is not entitled to judgment on the pleadings on its claim for damages for breach of the loan agreement with Nationwide Bank. On May 2, 2006, in exchange for a loan of $65,000, Frazier and Frazier Insurance executed a credit agreement and promissory note in favor of Nationwide Bank. As security for the loan, Frazier pledged "[a]ll commissions, extended earnings deferred compensation incentives credits, bonuses . . . and any other compensation now due or becoming due in the future under the Agent's Agreement." In the event that Frazier's agent agreement with Nationwide was cancelled, the loan would be considered in default, and the entire outstanding balance would become immediately due and payable. On July 14, 2009, Nationwide Bank assigned the loan to Nationwide. Nationwide alleges that it has suffered damages as a result of Frazier's default on the note; Frazier denies that he is in default or that Nationwide has suffered any damages. Frazier also alleges that Nationwide withheld deferred compensation payments to which he was entitled and that were offered as security on the loan. Assuming without deciding that Frazier defaulted on the loan and breached the contract by refusing to pay the outstanding balance when his agent agreement was cancelled, Nationwide might not succeed on its breach of contract claim if in fact Nationwide wrongfully withheld Frazier's deferred compensation payments. Thus, Nationwide is not entitled to judgment on the pleadings.

The defendant's motion for judgment on the pleadings is GRANTED with respect to the claims alleged in Paragraphs 15 (breach of contract for wrongful termination) and 19 (promissory estoppel) of the complaint. The motion is also GRANTED for Count I of the counterclaim. The motion is DENIED with respect to the claim alleged in Paragraph 18 of the complaint (breach of

contract for failure to pay deferred compensation payments) and Counts II through V of the counterclaim.  Document #16.

IT IS SO ORDERED this 25th day of August, 2010.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE